CITY of DARDANELLE *v.* CITY of RUSSELLVILLE, City Corporation, and Arkansas Dept. of Environmental Quality

07-195                                                    277 S.W.3d 562

Supreme Court of Arkansas
Opinion delivered February 28, 2008

*Richard H. Mays Law Firm*, by: *Richard H. Mays*, for appellant.

*Russellville City Attorney*, by: *William F. Smith, III*, for appellee City of Russellville; and *Streett Law Firm*, by: *Alex G. Streett* and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Marshall S. Ney*, for appellee City Corporation.

*Dustin McDaniel*, Att'y Gen., by: *Charles Moulton*, Sr. Ass't Att'y Gen., and *Kendra Akin Jones*, Ass't Att'y Gen., for appellee Arkansas Department of Environmental Quality.

Annabelle Clinton Imber, Justice. The instant appeal arises out of a longstanding dispute between Appellant City of Dardanelle and Appellees City of Russellville and City Corporation. Dardanelle filed a breach-of-contract action in the Pope County Circuit Court asserting that a joint resolution reached by the cities in May 2002 was a binding contract, which Russellville had breached. The circuit court dismissed the complaint pursuant to Arkansas Rule of Civil Procedure 12(b)(6) (2007), based on the reasoning that the joint resolution was not a contract. Dardanelle now appeals the circuit court's order, arguing that the circuit court erred in dismissing its complaint and in finding that the joint resolution was not a contract. Because the instant appeal involves an issue of substantial public interest, we have jurisdiction over the instant case. Ark. Sup. Ct. R. 1-2(b)(4) (2007).

City Corporation is the operator of Russellville's wastewater treatment facility. For several years, City Corporation has been discharging its sewage effluent into Whig Creek, a nearby body of water. In the mid-1990s, City Corporation became aware that it would no longer be able to meet the effluent discharge requirements under its permit from the Arkansas Department of Environmental Quality (ADEQ) unless extensive improvements were made to the treatment facility, or the discharge of sewage effluent

was redirected into a larger body of water. In 1996, City Corporation and Russellville applied to the ADEQ for a permit to build a pipeline that would discharge the effluent from the plant directly into the Arkansas River.

Russellville's permit application met considerable opposition from Dardanelle because the proposed pipeline outfall would be located downstream from the Dardanelle Dam, directly across the river from the Dardanelle City Park. The outfall would also have been across from a well that provided part of the city's water supply, and, apparently, the hydrology of the well water correlates to the water in the river. In addition, Dardanelle contended that the water in the area of the proposed outfall barely flows during the summer months.

To avoid the possible contamination of its lands and water, Dardanelle recommended that Russellville build the pipeline downstream of the Dardanelle city limits. A downstream pipeline, however, would cover a longer distance and would require a pumping system. The suggested adjustments would add almost six million dollars to the cost of the project. Because the extra funding was not available, Russellville declined to adopt Dardanelle's plan.

On May 10, 2002, after years of disagreement, city council members for both cities and members of City Corporation's board of directors signed a "Joint Resolution." The complete resolution is quoted below:

> WHEREAS, the cities of Dardanelle and Russellville, Arkansas and City Corporation, operator of the Water and Sewer Systems for the City of Russellville, Arkansas, have agreed with each other to cooperate in the pursuit of all avenues of funding for the proposed municipal outfall sewer line from the City of Russellville Treatment Plant to a point downstream of the present city limits of Dardanelle on the Arkansas River, and

> WHEREAS, the parties are in agreement with the proposed location for the municipal outfall sewer line from the City of Russellville Treatment Plant to a point downstream of the present city limits of Dardanelle on the Arkansas River, and

> WHEREAS, in order for this endeavor to be a successful venture, the cooperation of all concerned will be necessary.

> NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Dardanelle, and the City Council of the City

of Russellville, and the Board of Directors for City Corporation that we go on record as approving this agreement and urge all citizens of Yell and Pope County to work together in a united effort to obtain funding and approval for the municipal outfall sewer line for the City of Russellville.

Russellville also compiled a document that was circulated to the public, entitled "Russellville/Dardanelle Cooperative Construction Effort for a Wastewater Outfall Line to the Arkansas River." The plan contained a copy of the resolution, an explanation of the ongoing dispute between Russellville and Dardanelle, an estimate of the cost for the downstream pipeline, and maps showing the proposed location of the downstream pipeline. Governor Mike Huckabee wrote a letter addressed to the Arkansas Congressional delegation lending his support to the cities' resolution and urging an allocation of federal funds for the project. Representatives from both Russellville and Dardanelle traveled to Washington, D.C., to obtain federal funding for the downstream-pipeline project, but no funding was available.

On March 29, 2005, Russellville ceased efforts to obtain funding for the downstream pipeline and applied to the ADEQ for a permit to allow a pipeline outfall at the original, upstream location. On May 18, 2006, the ADEQ issued a draft permit for public comment, indicating its intent to issue a final permit.[1] Dardanelle then filed a complaint in the Pope County Circuit Court, against Russellville, City Corporation, and the ADEQ, alleging that the joint resolution was a contract that Russellville breached when it reapplied for the upstream-pipeline permit. Dardanelle requested specific perfomance of the joint resolution and an injunction preventing Russellville from building the pipeline upstream.

Russellville filed a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), arguing that the joint resolution was not a contract; rather, the resolution was merely a non-binding agreement to cooperate in the effort to obtain funding for the downstream pipeline. After a hearing on the motion, the circuit court entered an order dismissing Dardanelle's complaint, based upon its conclusion that the joint resolution did not contain the essential elements of a contract.

---

[1] A final permit was issued on January 23, 2007, and the issuance of the permit is currently being appealed to the Arkansas Pollution Control & Ecology Commission.

Under Ark. R. Civ. P. 12(b)(6), a circuit court may, upon a party's motion, dismiss a complaint that fails to state facts upon which relief can be granted. Ark. R. Civ. P. 12(b)(6) (2007). When reviewing a circuit court's dismissal pursuant to Ark. R. Civ. P. 12(b)(6), this court treats the facts alleged in the complaint as true and views them in the light most favorable to the plaintiff. *Branscumb v. Freeman*, 360 Ark. 171, 200 S.W.3d 411 (2004). In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in the plaintiff's favor. *Id.* Our rules require fact pleading and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*

Arkansas Code Annotated § 14-54-101 outlines the rights and obligations of municipalities in Arkansas and specifically states that a municipality has the power to enter into "contracts" and to "[a]ssociate with other municipalities for the promotion of their general welfare." Ark. Code Ann. § 14-54-101 (2), (4) (Repl. 1998 & Supp. 2007). The general rule is that where a municipality's charter commits the decision of a matter to the council alone, and is silent as to the mode of exercise, the decision may be evidenced by a resolution. Eugene McQuillin, The Law of Municipal Corporations § 15:6 (3d ed. 2004). This is especially true when applicable to ministerial acts or administrative business of a municipality. *Id.* However, a municipality's ability to act is tempered by its charter and other applicable laws. *Id.* Given that Ark. Code Ann. § 14-54-101 specifically allows for municipalities to contract and because nothing in the record indicates a limitation on either city's ability to contract, we conclude that both Russellville and Dardanelle were capable of making a contract by resolution.

Although there is a dearth of Arkansas case law regarding contracts between government entities, the leading treatise on municipal corporations informs us that contracts between municipalities are considered to be the same as contracts between natural persons and are governed by the same rules as to validity and effect, as well as the same rules of construction. *See* Eugene McQuillin, The Law of Municipal Corporations §§ 29.116–29.117 (3d ed. 1999). Additionally, the same remedies that are available to natural persons are also available to municipalities, including specific performance and injunctions. *Id.* at §§ 29.123, 29.128.

The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Williamson v. Sanofi Winthrop Pharms.*, 347 Ark. 89, 60 S.W.3d 428 (2001). This court cannot

make a contract for the parties but can only construe and enforce the contract that they have made; if there is no meeting of the minds, there is no contract. *Id.* Moreover, the terms of a contract cannot be so vague as to be unenforceable. *See Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992). The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Id.*

█ Despite Dardanelle's arguments to the contrary, the terms of the joint resolution are simply too vague to constitute a legally binding agreement. Specifically, the terms are not certain as to the parties' obligations. One of the essential elements of a contract is mutuality of obligations, which means that "an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Townsend v. Standard Indus.*, 235 Ark. 951, 954, 363 S.W.2d 535, 537 (1962). A contract, therefore, that leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other. *Showmethemoney Check Casher, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). Dardanelle asserts that the joint resolution contains obligations in the form of the cities' mutual promises to cooperate in pursuing funding and in locating the pipeline outfall downstream. We disagree.

The joint resolution states that the parties agreed to *"cooperate* in pursuit of all avenues of funding for the proposed municipal outfall sewer line." (Emphasis added.) "Cooperate" is a nebulous term, meaning to "work or act together." *Oxford American Desk Dictionary* 167 (2d ed. 2001). As used in the joint resolution, "cooperate" indicates, at best, that the cities agreed to help each other in obtaining funding. Yet, there is no indication of the length of time or the extent to which the cities must work together. Most importantly, the joint resolution does not provide any explanation as to when a party will be considered to have breached the agreement by not "cooperating" or, in other words, by not being helpful. In sum, the terms of the resolution are too uncertain to establish an obligation as to either party. Accordingly, we affirm the circuit court's decision to dismiss Dardanelle's complaint.

GLAZE, J., not participating.