RITA W. GRUBER, Chief Judge
Appellant Lewis M. Yancy, Jr., appeals from an order of the Jefferson County Circuit Court granting summary judgment to appellee Eugene Hunt. Mr. Hunt filed a breach-of-contract action against Mr. Yancy regarding an agreement between the parties pursuant to which Mr. Hunt, an attorney, provided legal services to Mr. Yancy in his divorce case. We hold that there are genuine issues of material fact to be decided; accordingly, we reverse the circuit court's order and remand for further proceedings.
Mr. Hunt's complaint alleged that the parties had entered into a contract on September 21, 2010, pursuant to which Mr. Hunt would represent Mr. Yancy in his *119 divorce case for a $2500 retainer and $200 per hour. He alleged that on July 30, 2012, he provided an itemized statement to Mr. Yancy for services rendered between September 28, 2011, and July 23, 2012, totaling $11,160. He alleged that on November 1, 2012, Mr. Yancy paid $350 on the account balance, leaving a balance of $10,810. The complaint indicated that since the July 2012 bill, Mr. Hunt had provided additional services in the amount of $850, leaving a final amount owing of $11,660, for which he billed Mr. Yancy in a statement dated March 27, 2013. Mr. Hunt attached four exhibits to his complaint: a copy of the contract; the itemized statement dated July 30, 2012; a receipt documenting Mr. Yancy's $350 payment made on November 1, 2012; and the statement provided to Mr. Yancy on March 27, 2013, for a balance due on the account of $11,660. Mr. Hunt also filed requests for admission.
Mr. Yancy filed an answer, admitting that he had hired Mr. Hunt to represent him in his divorce, stating that the contract between the parties "speaks for itself," and admitting that he had paid the $350 on his account represented by the receipt attached to the complaint. He denied the remaining allegations in the complaint, including the allegation that he owed Mr. Hunt $11,660. Mr. Yancy responded to Mr. Hunt's requests for admission, admitting that he had signed the contract, that he had paid $350 on November 1, 2012, and that his divorce case was tried in June 2012. Mr. Yancy also propounded interrogatories and requests for production of documents, to which Mr. Hunt replied on March 4, 2016.
In response to an interrogatory requesting Mr. Hunt to "list all payments made to you" by Mr. Yancy and an accompanying request for production, Mr. Hunt reported the following payments received from Mr. Yancy: $1,500 on September 23, 2010, and $1,000 on October 6, 2010, were both applied to the retainer; $250 on March 28, 2011, February 16, 2012, April 24, 2012, and June 5, 2012, indicate they were all applied to attorney's fees; $350 on July 13, 2012, receipt not clear but appears to be in part for subpoena; $45.75 on December 7, 2012, expense for subpoena; and $350 on November 1, 2012, reflected as attorney's fees paid in the statement provided to Mr. Yancy on March 27, 2013. Copies of the receipts for each of these payments were provided.
On April 29, 2016, Mr. Hunt filed a motion for summary judgment, contending that there was no genuine issue of material fact, and he was entitled to judgment as a matter of law on two issues: (1) whether there was a contract between the parties and (2) whether the amount he "sued on" was the amount of debt owed by Mr. Yancy. In support of his motion, he attached the same four documents that he had attached to his complaint. Mr. Yancy responded to the motion and filed a countermotion for summary judgment. He contended that there were multiple disputed factual issues, including the interpretation of provisions of the document (contending it was vague and ambiguous), how the money he paid had been allocated, whether Mr. Hunt "dedicated his full professional abilities" to the matter as the contract required, and the reasonableness of the total fee. He argued specifically that the contract contained "nebulous provisions" because it addressed the filing of only three pleadings and the amounts paid by Mr. Yancy were "more than sufficient" to cover those three tasks. He contended that any other services provided would be barred by the statute of frauds and the statute of limitations. Mr. Yancy did not attach any affidavits or other documents to his response.
*120 After a hearing, the circuit court entered an order on May 17, 2017, granting the motion without a detailed explanation and awarding judgment to Mr. Hunt against Mr. Yancy in the amount of $11,660 plus prejudgment interest, costs, and attorney's fees. Mr. Yancy filed this appeal.
The parties' contract is set forth below:
CONTRACT TO HIRE ATTORNEY Lewis M. Yancy, Jr. hereafter called "CLIENT" hereby hires and authorizes Eugene Hunt, hereafter called "ATTORNEY" to represent Client in the divorce case of Moneatha Yancy v. Lewis M. Yancy, Jr. DR-20101044-3, wherein Moneatha Yancy has asked the court to award her TEMPORARY SPOUSAL SUPPORT, TEMPORARY ALIMONY, PERMANENT ALIMONY And a DIVISION OF PROPERTY. Attorney will file an answer, Counterclaim and Petition for a restraining order. Attorney will dedicate his full professional abilities to this matter wherein attorney has been retained and client will fully cooperate with attorney. Attorney will charge a retainer of 91,500,00 9/22/11-91,000.00 10/7/10 Attorney shall be paid $200.00 per hour for all legal representation herein. Client agrees to pay all amounts owed by him to attorney upon the conclusion of this case. R 42 I have read the foregoing contract and a copy has been provided to me. Add 37 Done this 21st day September, 2010. LEWIS M. YANCY JR EUGENE HUNT
A circuit court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law. Mitchell v. Lincoln , 366 Ark. 592, 596, 237 S.W.3d 455, 458 (2006). Once the moving party has established prima facie entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. New Maumelle Harbor v. Rochelle , 338 Ark. 43, 46, 991 S.W.2d 552, 553 (1999). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact question unanswered. Kachigian v. Marion Cty. Abstract Co., 2011 Ark. App. 704, at 6, 2011 WL 5562777. This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Druyvestein v. Gean , 2014 Ark. App. 559, at 7, 445 S.W.3d 529, 532. Our review focuses not only on the pleadings, but also on the affidavits and documents *121 filed by the parties. Bingham v. C & L Elec. Coop. , 2015 Ark. App. 237, at 4, 459 S.W.3d 831, 833.
Summary judgment is not proper, however, "where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ." Thomas v. Sessions , 307 Ark. 203, 208, 818 S.W.2d 940, 943 (1991). The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. Flentje v. First Nat'l Bank of Wynne , 340 Ark. 563, 570, 11 S.W.3d 531, 536 (2000). We will not engage in a sufficiency-of-the-evidence determination. See id.
The issue on appeal is whether summary judgment was appropriate in this case. First, Mr. Yancy argues that the essential elements of the parties' contract are not reasonably certain because the phrases "dedicate his full professional abilities" and "legal representation" are uncertain and leave questions of fact regarding the parties' intent. He contends that the contract required Mr. Hunt merely to perform the tasks specifically mentioned in the contract: "file an answer, Counterclaim and Petition for a restraining order." He argues that the uncertainty regarding these terms makes the contract ambiguous and thus not subject to summary judgment.
This court cannot make a contract for the parties but can only construe and enforce the contract that they have made; if there is no meeting of the minds, there is no contract. City of Dardanelle v. City of Russellville , 372 Ark. 486, 490-91, 277 S.W.3d 562, 565 (2008). Moreover, the terms of a contract cannot be so vague as to be unenforceable. Id. The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. Id. at 491, 277 S.W.3d at 566.
The determination of whether ambiguity exists is ordinarily a question of law for courts to resolve. Machen v. Machen, 2011 Ark. App. 47, 380 S.W.3d 497. When a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine, and it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. Id. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. Id. The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. Id. We must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. Id. It is a well-settled rule that the intention of the parties to a contract is to be gathered, not from particular words and phrases, but from the whole context of the agreement. Id. In determining the true intentions of the parties, different clauses of a contract must be read together and construed so that all of its parts harmonize if that is possible. Harris v. Harris , 82 Ark. App. 321, 107 S.W.3d 897 (2003). Where the issue of ambiguity may be resolved by reviewing the language of the contract itself, it is the trial court's duty to make such a determination as a matter of law. Smith v. Farm Bureau Mut. Ins. Co. of Ark., Inc. , 88 Ark. App. 22, 194 S.W.3d 212 (2004).
Spann v. Lovett & Co. , 2012 Ark. App. 107, at 11-12, 389 S.W.3d 77, 88.
*122 Mr. Hunt produced the contract between the parties, which provides that Mr. Yancy has hired Mr. Hunt to represent Mr. Yancy "in the divorce case of Moneatha Yancy v. Lewis M. Yancy, Jr. DR-20101044-3, wherein Moneatha Yancy has asked the court to award her TEMPORARY SPOUSAL SUPPORT, TEMPORARY ALIMONY, PERMANENT ALIMONY And a DIVISION OF PROPERTY." The contract indicates that Mr. Hunt will file an answer, counterclaim, and petition for a restraining order; that he will "dedicate his full professional abilities to this matter"; and that the client will "fully cooperate." For these services, Mr. Yancy agreed to pay a retainer, "$200 per hour for all legal representation herein," and "all amounts owed by him to attorney upon the conclusion of this case." Mr. Hunt also provided two statements itemizing the services he provided, which included, without being limited to, the following: preparing for hearings, conferencing with the client, receiving and responding to letters, responding to a motion for sanctions, preparing a motion to strike, preparing a motion to compel, preparing for and taking depositions, attending to the service of subpoenas, conferencing with witnesses, motion to reconsider alimony, response to request for attorney's fees and hearing, answering interrogatories, preparing trial exhibits, and drafting proposed findings of fact and conclusions of law. Finally, Mr. Hunt produced receipts indicating that Mr. Yancy had already paid for some of his services.
The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. Although Mr. Yancy argues that the phrases "dedicate his full professional abilities" and "legal representation" are uncertain or ambiguous, he provided no evidence to suggest that Mr. Hunt did not provide these services, that he did not dedicate his full professional abilities, or that Mr. Yancy had requested Mr. Hunt not to perform any of these services. Indeed, receipts indicate that he has already paid for some of the services. His argument that the contract only anticipates Mr. Hunt's filing an answer, counterclaim, and petition for a restraining order pursuant to the contract is disingenuous at best. That language does not even contemplate Mr. Hunt's actually drafting these documents-which certainly must have been intended by the parties-but only filing the documents. Nor does that language contemplate preparing or filing interrogatories or responding to requests or motions from Ms. Yancy. According to Mr. Yancy's interpretation of the contract, it does not provide that Mr. Hunt will actually attend the divorce hearing. We simply do not read the contract the way Mr. Yancy now proposes. We consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning, and we gather the parties' intentions, not from particular words and phrases, but from the whole context of the agreement. Spann , 2012 Ark. App. 107, at 12, 389 S.W.3d at 88. Different clauses of the contract must be read together and construed so that all of its parts harmonize if that is possible. Id. Mr. Hunt presented a prima facie case that the parties entered into the contract, which contemplated the services rendered by, and set forth in, the itemized statement provided by Mr. Hunt. Mr. Yancy presented no evidence at all to rebut this or to raise a genuine issue of material fact on this issue.
Mr. Yancy also argues that there is a genuine issue of material fact regarding the disposition and allocation of the payments he made and whether and how the payments reduce the balance owed. Because we agree with Mr. Yancy that there is a genuine issue of material fact *123 regarding the exact amount owed on the contract, we reverse and remand.
Mr. Hunt provided receipts for payments made by Mr. Yancy. The payments of $1,500 on September 23, 2010, and $1,000 on October 6, 2010, were both applied to the retainer and therefore appear to have been allocated to services provided before the bill submitted to Mr. Yancy on July 30, 2012. The $250 payment made on March 28, 2011, also occurred before the services rendered in the July 2012 bill, which set forth services rendered beginning on September 28, 2011. The receipts dated after that payment do not clearly indicate how they were allocated, particularly the receipt dated July 13, 2012, for $350. From a notation on the receipt, the payment appears to have been allocated at least in part for subpoena expenses, but the handwriting on the receipt does not clearly indicate if all or only part of the amount went to expenses. Mr. Hunt contends in his brief that the receipt indicates Mr. Yancy had a "zero balance on his account" as of "August 31, 2011." While that very well may be, this court cannot tell from the receipt alone that this is the case. Without an evidentiary explanation of the allocation of these payments-for example, a ledger or affidavit of explanation-there is a factual question regarding the exact amount owed to Mr. Hunt. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. New Maumelle Harbor v. Rochelle , 338 Ark. 43, 45-46, 991 S.W.2d 552, 553 (1999). Therefore, we reverse and remand to determine the amount owed pursuant to the contract.
Reversed and remanded.
Whiteaker and Hixson, JJ., agree.