KELLY, Circuit Judge, dissenting.
As I read the lease, the holdover provision's conditional language ("If after the expiration of the lease, the Government *1064 shall retain possession of the premises ..." (emphasis added)) explains what happens once the FAA becomes a holdover tenant, but it is silent as to how the holdover tenancy may be established in the first place. The FAA interprets this silence as allowing it unfettered discretion to become a holdover tenant at the end of the lease. Given the lease's important public safety purpose, this interpretation may be reasonable. But in my view, it would be just as reasonable to interpret this silence as calling for application of the common-law understanding of holdover tenancies. And at common law, a tenant becomes a holdover tenant only when the "landlord consents to [the] tenant's remaining in possession of the leased premises after the expiration of the term." 49 Am. Jur. 2d Landlord and Tenant § 289.
Because the lease's holdover provision "is fairly susceptible to more than one equally reasonable interpretation," it is ambiguous as a matter of law. Yancy v. Hunt, 2018 Ark. App. 195, 547 S.W.3d 116, 121 (Ark. Ct. App. 2018) (quoting Spann v. Lovett & Co., 2012 Ark. App. 107, 389 S.W.3d 77, 88 (Ark. Ct. App. 2012) ). As a result, I would remand the case to the ODRA for further proceedings. See United States v. Seckinger, 397 U.S. 203, 216, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970) (holding that ambiguous contractual provisions should be construed against the drafter, even if the drafter is the government); Hanners v. Giant Oil Co. of Ark., Inc., 373 Ark. 418, 284 S.W.3d 468, 473 (2008) ("Where an ambiguity is found within the contract, parol evidence may be admitted ... to prove an independent, collateral fact about which the written contract was silent."). Accordingly, I respectfully dissent.