Cite as 2020 Ark. 133
# SUPREME COURT OF ARKANSAS
No. CV-18-1012

| | |
|---|---|
| JORJA TRADING, INC.; AUTOMATIC AUTO FINANCE, INC.; CASHFISH MOTOR PAWN, INC.; VIRGINIA RIVERS; MONTE JOHNSTON; AND JOHN DOES 1–10 APPELLANTS | **Opinion Delivered:** April 9, 2020 |
| | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-16-2237] |
| V. | |
| | HONORABLE JOHN C. THREET, JUDGE |
| LEAH WILLIS AND ADRIAN BARTHOLOMEW APPELLEES | REVERSED AND REMANDED; COURT OF APPEALS' OPINION VACATED. |

**RHONDA K. WOOD, Associate Justice**

Jorja Trading, Inc.; Automatic Auto Finance, Inc.; Cashfish Motor Pawn, Inc.; Virginia Rivers; Monte Johnston; and John Does 1–10, appeal the circuit court's denial of their motion to compel arbitration. Because the contract is supported by mutual obligations and the contract plainly stated that appellants did not waive arbitration by obtaining a monetary judgment in the small-claims division of district court, we reverse and remand.

## I. *Background*

Appellees, Leah Willis and Adrian Bartholomew, purchased a vehicle from Automatic Auto Finance with an installment-sales contract. Automatic Auto Finance later assigned the installment-sales contract to Jorja Trading. After failing to make their scheduled payments, appellees voluntarily surrendered the vehicle. The vehicle was sold, and appellees'

account was credited. However, a balance remained, and Jorja Trading filed a complaint in the small-claims division of district court seeking payment for the remaining balance. Following a hearing, the district court entered judgment against appellees in the amount of $3,036.84, plus $225 in costs.

Appellees timely appealed the district court judgment to the Washington County Circuit Court, counterclaimed based on usury and UCC violations, and sought class certification. Appellants filed a motion to compel arbitration. The circuit court denied appellants' motion. It concluded that the arbitration agreement[1] contained in the parties' installment-sales contract lacked mutuality of obligation in the following three areas: (1) it reserved the right of both parties to seek self-help remedies, (2) it provided that both parties waive class-action lawsuits, and (3) it allowed appellants to reject appellees' selection of an arbitrator. In addition, the circuit court held that even if the arbitration agreement was valid, the appellants had waived it by first proceeding in district court. Appellants filed an interlocutory appeal, and the court of appeals affirmed. *Jorja Trading, Inc. v. Willis*, 2018 Ark. App. 574. We granted appellants' petition for review.

II. *Analysis*

A. Standard of Review

Arkansas strongly favors arbitration as a matter of public policy. *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356. It is a less expensive and more expeditious means of settling litigation and relieving docket congestion. *Id*. We review a

---

[1]Consistent with our prior cases, here we refer to the arbitration clause as an "arbitration agreement." However, the arbitration agreement is a paragraph contained in the installment-sale contract; it is not a separate, independently executed contract.

denial of a motion to compel arbitration de novo on the record. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 375 Ark. 24, 289 S.W.3d 37 (2008).

III. *Mutuality of Obligations*

Appellants argue that this arbitration agreement, and the installment-sales contract as a whole, has mutuality of obligations. The arbitration agreement is governed by the Federal Arbitration Act (FAA). The FAA makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has consistently required courts to place arbitration agreements on equal footing with all other contracts and enforce them according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). A court may invalidate an arbitration agreement based on "generally applicable contract defenses," but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*; *see also Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017). "The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *BHC Pinnacle Pointe Hosp., LLC v. Nelson*, 2020 Ark. 70, at 11, 594 S.W.3d 62, 71. We have explained that any doubts and ambiguities will be resolved in favor of arbitration. *Id.*

When deciding whether the parties agreed to arbitrate a certain matter, ordinary state-law principles governing contract formation apply. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995); *Henry*, 2014 Ark. 361, at 6, 444 S.W.3d at 360. We employ Arkansas contract law to decide whether the contract was validly entered, but our review is limited to the extent that it applies to contracts generally, and not arbitration agreements

selectively. *See Kindred Nursing Ctrs.*, 137 S. Ct. 1421 (finding that a state-contract rule that discriminates on its face against arbitration or that covertly accomplishes the same objective by disfavoring contracts that have the defining features of arbitration agreements was illegal); *Concepcion*, 563 U.S. at 339. And, "state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (citing *Concepcion*, 563 U.S. at 352). Because the FAA's principle purpose is to ensure the enforcement of arbitration agreements according to their terms, in other cases the Supreme Court has held that "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *Concepcion*, 563 U.S. at 344 (internal citations omitted) (emphasis removed).

In Arkansas, the essential elements of a contract are (1) competent parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations. *City of Dardanelle v. City of Russellville*, 372 Ark. 486, 491, 277 S.W.3d 562, 565–66 (2008). Here, the circuit court found that the arbitration agreement was invalid because it lacked mutuality of obligations. Mutuality of obligations means "an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound." *Jordan v. Diamond Equip. & Supply Co.,* 362 Ark. 142, 153, 207 S.W.3d 525, 533 (2005). It requires that the terms of the agreement "impose real liability upon both parties." *Independence Cty. v. City of Clarksville*, 2012 Ark. 17, at 7, 386 S.W.3d 395, 399. For example, we have held that mutuality was not lacking in a purchase contract between a town and regional water authority because the town agreed

4

to pay the authority to provide potable water to the town's master meter in exchange for payment, and the parties adhered to the contract for ten months. *Town of Lead Hill v. Ozark Mountain Reg'l Pub. Water Auth.*, 2015 Ark. 360, 472 S.W.3d 118.

However, a contract that provides one party the option not to perform his promise would not be binding on the other. *City of Dardanelle*, 372 Ark. 486, 277 S.W.3d 562 (2008). Thus, in *City of Dardanelle*, we held that a joint resolution that required two cities to "cooperate" lacked mutuality because such an obligation was too vague to be legally binding on either party. *Id.*

The appellants contend the installment-sales contract as a whole and the arbitration agreement within it mutually obligates the parties to arbitrate. Appellees did not challenge the mutuality of the installment-sales contract as a whole. Appellants delivered possession of and financed a car in exchange for appellees' down payment and a promise to make future payments, satisfying mutuality of the installment-sales contract. Both parties agreed to arbitrate any disputes that could not be resolved in small-claims court and agreed on the parameters of arbitration should it occur. Despite this, the circuit court found that three provisions within the arbitration agreement of the contract destroyed mutuality because it could not conceive of scenarios where those provisions applied bilaterally. We disagree. This court has not required that every provision within a contract be bilateral. We therefore cannot require that every provision in an arbitration agreement be bilateral without violating the FAA because doing so would hold arbitration agreements to a more stringent analysis than other contracts. Because the FAA preempts, we cannot single out a rule or application

5

unique to arbitration agreements. *Kindred Nursing*, 137 S. Ct. at 1426–28. That is precisely what the FAA prohibits.

The Supreme Court explained this in reversing a California decision in *DIRECTV v. Imburgia*, 136 S. Ct. 463 (2015). In that case, the Court found that California, under the guise of applying state law, voided an arbitration agreement on a ground it would not have voided in a traditional contract. *Id*. "The fact that we can find no similar case interpreting the words . . . to reach a similar conclusion in similar cases that *do not* involve arbitration" suggested that California was selectively applying contractual requirements to arbitration agreements alone. *Id*. at 470–71 (emphasis added). A court cannot invalidate an arbitration agreement on legal rules that apply only to arbitration agreements *Id*.

The appellants contend the circuit court erred in finding three provisions within the arbitration agreement destroyed mutuality of obligation for the contract. Both parties have bound themselves to arbitrate. Nevertheless, we review each provision addressed by the circuit court. First, the arbitration agreement provides that both parties "retain the right to self-help remedies, such as repossession." Appellees assert that because the borrower cannot employ repossession, and no additional consideration was given for the reservation of that right, the arbitration agreement is invalid. Under our state-contract precedent, mutuality of obligation does not require a precisely even exchange of identical rights and obligations between the contracting parties. *Lindner v. Mid-Continent Petroleum Corp.*, 221 Ark. 241, 252 S.W.2d 631 (1952); *Johnson v. Johnson*, 188 Ark. 992, 68 S.W.2d 465 (1934). "It is enough that the duty unconditionally undertaken by each party be regarded by the law as a sufficient consideration for the other's promise." *Lindner*, 221 Ark. at 244, 252 S.W.2d at 632. And

6

applying the Supreme Court's standards set in *Kindred Nursing*, the self-help provision cannot destroy mutuality of obligation unless we also conclude that giving one party the right to self-help negates mutuality in all contracts, even those without arbitration agreements. But no Arkansas contract principles would support such a rule. And we are reluctant to now hold that all installment-sales contracts cannot have self-help provisions. Therefore, this provision does not void the arbitration agreement.

Second, the circuit court found that mutuality of obligation was absent in the provision that prohibits both parties from filing a class-action lawsuit. The installment-sales contract provides, "Any claim or dispute is to be arbitrated on an individual basis, and not as a class action; and, you expressly waive any right you may have to arbitrate a class action." Again, we begin with the principle that we cannot invalidate a provision within an arbitration agreement unless we would likewise invalidate it under Arkansas contract law generally. The Supreme Court reviewed a very similar issue in *Concepcion*. 563 U.S. 333. There, AT&T's cellular-telephone sales and service agreement provided for arbitration of all disputes but required that claims be brought in the parties' "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." *Id*. at 336. The Ninth Circuit, applying California law, had concluded that class waivers in consumer-arbitration agreements were invalid. *Id*. at 340. The Supreme Court reversed, holding that the FAA preempts the California rule, which "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id*. at 344; *see also Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (2013).

Here, the circuit court concluded that mutuality was lacking because class-action waivers have no impact on appellants when there is no class action for them to waive. But again, under Arkansas contract law, the failure of the appellees to receive precisely the same benefit from the arbitration agreement as appellants does not negate the entire contract's mutuality of obligation. *Lindner*, 221 Ark. 241, 252 S.W.2d 631; *Johnson*, 188 Ark. 992, 68 S.W.2d 465. Furthermore, as the Supreme Court held in *Concepcion*, "although [the FAA's] § 2's savings clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." 563 U.S. at 343. Thus, we hold that the class-action waiver does not violate Arkansas contract law, and even if it did, the FAA would preempt such a rule under *Concepcion*. A similar class-action waiver provision would not invalidate the mutuality of obligation in other installment-sales contracts; therefore, it cannot destroy mutuality by appearing in an arbitration agreement within the same contract merely because it is applicable to arbitration.

Third, the circuit court concluded that arbitration cannot be compelled because appellants have the unilateral option of avoiding arbitration by refusing to consent to the appellees' selection of arbitrator. We disagree with the circuit court's interpretation of the arbitrator-selection provision. The provision provides that the purchaser may select the arbitrator "with [the seller's] consent" but goes on to state that if the parties cannot agree on an arbitrator, one would be appointed by the court. While this provision places the initial burden on the appellees to select an arbitrator, it does not allow the appellants to avoid

8

arbitration simply by refusing to consent. We therefore apply the contract as written, hold

that the circuit court erred, and find that the arbitration agreement is valid.

## IV. *Waiver*

Finally, appellees argue that Jorja Trading waived arbitration by first filing a

complaint for monetary judgment in the small-claims division of district court. We apply

the same rules of construction to arbitration agreements as we do to contracts generally.

*BHC Pinnacle Pointe Hosp.*, 2020 Ark. 70, at 12, 594 S.W.3d at 70. When the parties express

their intention in a contract in clear and unambiguous language, we must construe the

written agreement according to its plain meaning. *C.&A. Constr. Co., Inc. v. Benning Constr.

Co.*, 256 Ark. 621, 622, 509 S.W.2d 302, 303 (1974). Only if the meaning of a written

contract is ambiguous will parol evidence be admissible to explain the writing. *Id*. The

question of whether a contract's language is ambiguous is one of law to be resolved by the

court. *Id*.

Here, the plain language of the installment-sales contract states that seeking judicial

relief for a monetary judgment is not a waiver to arbitration:

> The institution and maintenance of any action for judicial relief in a court to obtain a monetary judgment or to enforce this Contract *shall not constitute a waiver of the right of any party to compel arbitration* regarding any dispute or remedy subject to arbitration in this Contract. . . . You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred or removed or appealed to a different court.

(Emphasis added.) Under these unambiguous terms, appellants may seek a monetary

judgment in district court without waiving arbitration. And likewise, appellees do not waive

any right to arbitration by filing an action in district court, for example, to recover the

9

vehicle in the event of wrongful repossession. Therefore, under the contract's plain language, Jorja Trading did not waive the right to arbitrate by first seeking monetary relief in district court.

The circuit court erred in denying the appellants' motion to compel arbitration. We reverse and remand.

Reversed and remanded; court of appeals' opinion vacated.

Special Justice TIFFANY MILLIGAN BROWN concurs.

BAKER, HUDSON, and WYNNE, JJ., dissent.

HART, J., not participating.

**TIFFANY MILLIGAN BROWN, Special Justice, concurring.** I concur in the well-reasoned opinion of the majority. I write separately to express my view that we should eliminate the antiquated mutuality-of-obligation requirement in arbitration provisions. Currently, Arkansas law provides that "mutuality within the arbitration agreement itself is required, and that analysis depends on Arkansas contract law." *The Money Place, LLC v. Barnes*, 349 Ark. 411, 414, 78 S.W.3d 714, 717 (2002). Under modern contract law, however, the doctrine of mutuality of obligation is no longer required so long as the agreement as a whole is supported by consideration. *See* Restatement (Second) of Contracts § 79 (1981) ("If the requirement of consideration is met, there is no additional requirement of mutuality of obligation."). The arbitration clause should not be considered as a separate contract within a contract, supported by its own consideration; instead, "consideration for a contract as a whole covers the arbitration clause." *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir. 1998).

"Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511, (1974)). "A doctrine that require[s] separate consideration for arbitration clauses might risk running afoul of" "decisions of the Supreme Court [that] have consistently emphasized that the FAA is grounded in a strong federal policy favoring arbitration." *Doctor's Assocs. v. Distajo*, 66 F.3d 438, 453 (2d Cir. 1995). "[R]equiring identical reciprocal promises only for arbitration agreements would be contrary to federal law" because the FAA "requires that states place arbitration agreements on an equal footing with other contracts." *Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 835 (8th Cir. 2018) (citing *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, ___ U.S. ___, 137 S. Ct. 1421, 1424 (2017)).

Indeed, the Eighth Circuit has *strongly* cautioned this court that application of Arkansas's mutuality-of-obligation rule to arbitration agreements violates the FAA. *See Plummer v. McSweeney*, 941 F.3d 341, 347 (8th Cir. 2019) ("Even if there were [such a mutuality-of-obligation requirement under D.C. law] we would not apply it because it contravenes the FAA's directive that courts place arbitration contracts on an equal footing with other contracts."); *see also id*. at 347 n.1 ("Our court has already intimated that the rule followed in Arkansas with respect to arbitration agreements therefore violates the FAA."). "Arkansas law requiring mutuality within the arbitration paragraph itself would be preempted because it violates the FAA by giving such clause unequal footing with other contract terms that do not each have to be mutual, such other contract terms requiring mutuality only as to the contract as whole." *Enderlin v. XM Satellite Radio Holdings, Inc.*, No.

4:06-CV-0032 GTE, 2008 WL 830262, at *9 (E.D. Ark. Mar. 25, 2008), *cited with approval in Plummer*, 941 F.3d at 347 n.1.

I recognize that Eighth Circuit decisions are "not binding on our court," but they are "highly persuasive." *Decay v. State*, 2009 Ark. 566, at 6, 352 S.W.3d 319, 325. Because the Eighth Circuit is a federal court tasked with interpreting federal law and the FAA, I would "heed[] the Eighth Circuit's warning . . . that a doctrine requiring separate consideration for arbitration clauses might violate federal policy" and abolish the requirement of mutuality of obligation in arbitration provisions. *Enderlin*, 2008 WL 830262, at *9.

Eliminating this requirement, at least as it pertains to arbitration provisions, would align us with the majority of the courts that have followed the Restatement (Second) of Contracts § 79(c). "Today, virtually all courts hold that the doctrine of mutuality of obligation does not preclude enforcement of nonmutual arbitration clauses." Christopher R. Drahozal, *Nonmutual Agreements to Arbitrate*, 27 J. Corp. L. 537, 544 (2002). Arkansas remains the "principal exception." *Id.* at 545.

In summary, "[t]he doctrine of mutuality of obligation has been 'thoroughly discredited' . . . ." Drahozal, *supra*, at 539 (quoting John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 4.12, at 201 (4th ed. 1998)). It is time for this court to adopt the majority view and abolish the requirement for mutuality of obligation, at least as it pertains to arbitration provisions, before it finds itself *compelled* to do so.

**ROBIN F. WYNNE, J., dissenting.** The majority errs in reversing the denial of appellants' motion to compel arbitration in this case. Quite simply, the majority ignores our precedent regarding mutuality of obligation in arbitration provisions. I respectfully dissent.

Although an arbitration provision is subject to the Federal Arbitration Act, courts look to state contract law to decide whether the parties' agreement to arbitrate is valid. *DIRECTV, Inc. v. Murray*, 2012 Ark. 366, at 3, 423 S.W.3d 555, 559. According to Arkansas law, arbitration is a matter of contract between the parties, and whether a dispute should be submitted to arbitration is a matter of contract construction. *Id.* (citing *Independence Cty. v. City of Clarksville*, 2012 Ark. 17, 386 S.W.3d 395). The same rules of construction apply to arbitration agreements as apply to agreements generally, and thus this court seeks to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Id.* As the majority correctly states, the essential elements of a contract are (1) competent parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations. *City of Dardanelle v. City of Russellville*, 372 Ark. 486, 491, 277 S.W.3d 562, 565–66 (2008). Under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 139, 60 S.W.3d 436, 441 (2001).

This court has repeatedly looked beyond the surface of an arbitration agreement purporting to equally bind both parties to hold that mutuality was destroyed when no real liability is imposed on one party. For example, in the recent case *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624, this court found that an arbitration agreement requiring all claims involving $30,000 or more be resolved exclusively by binding

arbitration was void for lack of mutuality. Although purportedly applying equally to both parties, the $30,000 limitation served to shield the nursing-home facility from defending itself in the court system against the majority of potential claims by residents, whose maximum debt to the facility before being discharged was between $6800 and $7600, while reserving the right to utilize the court system for its likely claims. Similarly, in *Regional Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356, this court held that the arbitration clause at issue lacked mutuality because, by reserving the right to litigate billing or collection disputes, the nursing-home facility excluded from arbitration the only likely claim it might have against a resident. As a final example, this court held that the arbitration provision lacked the element of mutuality in *E-Z Cash Advance*, 347 Ark. 132, 60 S.W.3d 436, because the check casher reserved the right to pursue "all civil remedies" when a borrower's check was returned by his or her financial institution. Thus, the requirement of binding arbitration was not mutually binding on both parties, and this court held that the arbitration provision was not enforceable.

Here, while the arbitration agreement purports to give both parties the right to employ self-help remedies, "such as repossession," it is one-sided because only Jorja actually has the ability to use self-help remedies. Based on the lack of mutual obligations, which goes to the heart of the arbitration provision—what remedies are available to the parties—I would hold that the arbitration provision is unenforceable and affirm.

I respectfully dissent.

BAKER and HUDSON, JJ., join.

*Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, by: *Scott E. Wray* and *Grace K. Johnson*, for appellants.

14

*The Story Law Firm, PLLC*, by: *Travis W. Story* and *Gregory F. Payne*, for appellees.