

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–14–270

| | | |
|---|---|---|
| TERRY DRUYVESTEIN<br><br>APPELLANT<br><br>V.<br><br>ROY GEAN, JR.<br><br>APPELLEE | | **Opinion Delivered** October 22, 2014<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. CV-2012-34]<br><br>HONORABLE JAMES O. COX, JUDGE<br><br>REVERSED AND REMANDED |

**RITA W. GRUBER, Judge**

Appellant Terry Druyvestein appeals from an order of the Sebastian County Circuit Court granting summary judgment to appellee Roy Gean, Jr. Appellant filed a complaint against appellee alleging fraudulent transfer and also requesting the court to impose a constructive trust on certain funds held by appellee that were acquired from Lois Druyvestein. We hold that there were genuine issues of material fact to be decided on both claims; accordingly, we reverse the circuit court's order and remand for further proceedings.

This case arose out of a dispute over the ownership of a bond account after the death of appellant's uncle, H.J. "Humpy" Druyvestein. Humpy died on February 24, 2007, survived by his wife Lois Druyvestein. It was unclear at Humpy's death whether he intended to leave the bond account at Summit Brokerage to either Lois or appellant. Appellant filed a complaint against Lois in October 2007 seeking a constructive trust over the bond account,

which the circuit court dismissed. In an opinion dated June 16, 2010, this court reversed that dismissal, and the circuit court subsequently entered judgment in favor of appellant for an amount in excess of $200,000. *Druyvestein v. Summit Brokerage Servs., Inc.*, 2010 Ark. App. 500, 375 S.W.3d 777. Lois's daughter, Linda Van Divner, appeared in lieu of her mother in that case and also answered postjudgment interrogatories, through which appellant learned that the funds from the bond account in the amount of $208,830.72 had been liquidated. According to a letter from Ms. Van Divner attached to appellant's complaint in this case, Lois's lawyer in the previous case, appellee, received a check for the entire proceeds of the account made out to Lois. He drove to Kansas to have Lois endorse the check; he placed the proceeds in his own account; then he wrote a check to Ms. Van Divner for $105,625.72 and kept the remaining $103,205, presumably for his fee. When Ms. Van Divner asked appellee for a statement for services rendered to explain the amount, appellee never provided one.

On January 11, 2012, appellant filed a complaint against Ms. Van Divner and appellee for the creation of a constructive trust and for relief pursuant to the Arkansas Fraudulent Transfer Act, found in Ark. Code Ann. § 4-59-201 et seq. He filed an amended complaint on February 9, 2012.[1] Appellant alleged that Ms. Van Divner and appellee took control of the entire funds to which he was entitled and requested the court to create a constructive trust over the funds. He alleged that Ms. Van Divner concealed the location of the funds for more than a year and defrauded the court by failing to reveal in requested interrogatories the location of the funds. Appellant also alleged that Ms. Van Divner and appellee transferred the

---

[1]Lois passed away sometime before appellant filed his amended complaint.

funds to themselves without the knowledge or consent of Lois, the court, or any guardian acting on behalf of Lois.

In addition, appellant requested relief under the Arkansas Fraudulent Transfer Act, claiming that Lois's estate was insolvent, that this fact was known or should have been known to Ms. Van Divner and appellee, that Ms. Van Divner and appellee were aware of appellant's claim to the funds at the time they transferred them to themselves, and that Lois did not have sufficient funds to satisfy the judgment to appellant upon her death. He claimed that the transfers to Ms. Van Divner and appellee left Lois's estate unable to pay appellant, her creditor. He alleged that, pursuant to Ark. Code Ann. § 4-59-207, the transfers to Ms. Van Divner and appellee were not made for value received and thus were fraudulent under the statute. Finally, he alleged that appellee's fee was six times the fee that his counsel charged for similar work on the same matter and was not based on value. He concluded by requesting the court to void the transactions.

## I. *Summary Judgment*

On July 20, 2012, appellee filed a motion for summary judgment, alleging that appellant had no standing to question the payment of an attorney's fee from Lois to him. He asserted that he had no direct relationship to appellant and that they lacked privity of contract. He alleged that it was undisputed that appellee "provided legal services for Lois Druyvestein based upon a agreement between Ms. Druyvestein and Mr. Gean and the attorney fee was voluntarily paid by Lois Druyvestein." Although there were no attachments to the motion, appellee did file a brief in support, which contained the following legal

3

arguments: (1) appellant assumed the risk of Lois transferring the money by failing to file a supersedeas bond in the earlier case; (2) appellant could not recover under a valid contractual theory and was not a third-party beneficiary to appellee's fee contract; (3) appellant could not recover under a valid tort-based theory; (4) appellant had no standing under the Declaratory Judgment Act to require appellee to pay his attorney's fee collected from a non-party to the case; (5) appellant could not collect under a fiduciary-duty theory because appellee owed appellant no fiduciary duty; and (6) appellant could not establish a constructive trust because there was no fraud or confidential relationship. Appellant filed no response to appellee's motion.

On May 29, 2013, the circuit court granted appellee's motion for summary judgment, stating that it had considered the motion, "attachments[,] and Brief." The court found that appellee "performed legal services for Lois Druyvestein and that Mr. Gean was paid for such services based upon an agreement between him and Ms. Druyvestein. Said agreement reflected the understanding of Ms. Druyvestein and Mr. Gean as to the value of the services rendered." The court then concluded that by failing to file a supersedeas bond in the earlier case, appellant bore the risk that Lois would no longer have the money to pay him if he obtained a favorable judgment on appeal. The court then found that appellant had no "direct relationship" with appellee and thus no viable theory of law to recoup the money paid by Lois to appellee. The court's order then essentially parroted appellee's brief, rejecting recovery based on a contractual theory, a tort theory, and declaratory-judgment law. Finally, the court found that there must be clear, cogent, and convincing evidence of fraud or a

4

confidential relationship to establish a constructive trust and that there was no fraud or confidential relationship between appellant and appellee in this case. The court's order did not mention the Arkansas Fraudulent Transfer Act.

Appellant filed a petition to set aside the order granting summary judgment, attaching billing records provided by appellee to Ms. Van Divner for services he had rendered to Lois. Ms. Van Divner provided this statement and testified regarding the statement in a deposition that was also attached to appellant's motion to set aside the order. Appellant's petition restated his fraudulent-transfer and constructive-trust allegations, specifically referring to appellee's billings. There were many days on which appellee billed over 24 hours; on one day he billed over 60 hours. Sample entries included a five-hour call to a brokerage company to review disbursement arrangements and one day that included 3 three-hour calls with Ms. Van Divner (which she disputed in her deposition), eight hours to review the Reporter's Index pertaining to Depositions, eight hours to review a file, and eight hours to review exhibits. Without further detailing the statement, we note that no entry, including entries to review a letter or make a phone call, took less than two hours.

## II. *Final Order*

On January 23, 2014, the court entered a final order, finding that appellant was a creditor of Lois as a result of funds held by Summit Brokerage, which were "improperly paid over to [Lois] when they should have been paid to [appellant]" and recognizing that the court had entered a judgment in favor of appellant in the previous case. The court then found that Lois had transferred the funds to Ms. Van Divner and appellee and noted that it

had previously entered an order of summary judgment in favor of appellee. The court denied

appellant's motion to reconsider. The court then found that Lois had made the transfer to

Ms. Van Divner "without receiving reasonably equivalent value in exchange for the transfer

and [Lois] believed or reasonably should have believed that she was incurring debts beyond

her ability to pay as they became due." The court found that appellant was damaged by the

transfer "in the amount of at least $60,000," ordered Ms. Van Divner to pay that amount to

the court, and granted appellant a judgment for that amount. Appellant filed a notice of

appeal designating the court's final order and order granting appellee's motion for summary

judgment. Neither appellant nor Ms. Van Divner appealed from the $60,000 judgment

against her.

A circuit court may grant summary judgment only when it is clear that there are no

genuine issues of material fact to be litigated and that the party is entitled to judgment as a

matter of law. *Mitchell v. Lincoln*, 366 Ark. 592, 596, 237 S.W.3d 455, 458 (2006). The

burden of sustaining a motion for summary judgment is always the responsibility of the

moving party. *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 45–46, 991 S.W.2d 552, 553

(1999). Once the moving party has established prima facie entitlement to summary judgment

by affidavits, depositions, or other supporting documents, the opposing party must meet

proof with proof and demonstrate the existence of a material issue of fact. *Id*. at 46, 991

S.W.2d at 553. When the proof supporting a motion for summary judgment is insufficient,

there is no duty on the part of the opposing party to meet proof with proof. *Inge v. Walker*,

70 Ark. App. 114, 120, 15 S.W.3d 348, 352 (2000). Summary judgment is not granted simply

SLIP OPINION

because the opposing party fails to respond to the motion. *Id.* at 119, 15 S.W.3d at 352. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Kachigian v. Marion Cnty. Abstract Co.*, 2011 Ark. App. 704, at 6. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

### III. *Point on Appeal*

The issue on appeal is whether summary judgment was appropriate in this case. We hold that it was not, and we reverse and remand for further proceedings.

Appellant's complaint requested relief under two theories: constructive trust and fraudulent transfer. Thus, we note first that appellee's arguments and the circuit court's findings regarding contractual third-party beneficiaries, tort law, and the declaratory-judgment act are irrelevant to this case. We turn to appellant's claim under the Arkansas Fraudulent Transfer Act. Under the Act,

> a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Ark. Code Ann. § 4-59-205(a) (Repl. 2011).

A transfer is fraudulent as to a creditor regardless of whether the creditor's claim arose before or after the transfer if the debtor made the transfer "without receiving a reasonably equivalent value in exchange" for the transfer and the debtor either intended to incur, or

7

"believed or reasonably should have believed" that she would incur, debts beyond her ability to pay as they became due. Ark. Code Ann. § 4-59-204(a) (Repl. 2011). A creditor may obtain avoidance of the transfer under the Act. Ark. Code Ann. § 4-59-207 (Repl. 2011). A transfer is not voidable under the Act against a person who took in good faith and for a reasonably equivalent value. Ark. Code Ann. § 4-59-208(a) (Repl. 2011).

Appellant alleged in his complaint that Lois's estate was insolvent, that this fact was known or should have been known to Ms. Van Divner and appellee, that Ms. Van Divner and appellee were aware of appellant's claim to the funds at the time they transferred Lois's funds to themselves, and that Lois did not have sufficient funds to satisfy the judgment to appellant upon her death.[2] He claimed that the transfers to Ms. Van Divner and appellee left Lois's estate unable to pay appellant, her creditor. He alleged that the transfers to Ms. Van Divner and appellee were not made for value received and thus were fraudulent under the statute. He specifically alleged that appellee's fee was six times the fee his counsel charged for similar work on the same matter and was not based on value.

Appellee's motion for summary judgment mentioned the Fraudulent Transfer Act only by stating that appellant's complaint asserted it. Appellee gave no explanation why it did not apply. He stated only that he and appellant had no "direct relationship" and lacked "privity of contract," and that appellant lacked "standing." He then alleged in his motion that

---

[2]We note that the circuit court found in its final order that Lois made the transfer to Ms. Van Divner without receiving reasonably equivalent value in exchange for the transfer and that, at the time, she believed or reasonably should have believed that she was incurring debts beyond her ability to pay as they became due.

it was undisputed that he provided legal services for Lois "based upon an agreement" between Lois and him and that "the attorney fee was voluntarily paid" by her. He did not attach this alleged agreement to his motion or an affidavit detailing facts about the agreement. Indeed, he attached no documents at all to his motion—only a nine-page brief that did not contain any arguments about the fraudulent-transfer allegations. It did not even mention the Act; rather, appellee explained why appellant could not proceed under four theories that were not alleged—contract, tort, declaratory-judgment, and fiduciary duty.

In granting appellee's motion for summary judgment, the court stated that it had considered the motion, attachments (of which there were none), and brief and had found good cause. The court then found that appellee "performed legal services for Lois Druyvestein and that Mr. Gean was paid for such services based upon an agreement between him and Ms. Druyvestein. Said agreement reflected the understanding of Ms. Druyvestein and Mr. Gean as to the value of the services rendered." We are not certain how the circuit court made this finding, as the agreement was not attached to the motion nor was there an affidavit describing the details of this agreement. Although there are summary-judgment cases in which there are no factual issues, only legal issues, this is not one of those. When there are factual issues, in deciding a motion for summary judgment, a trial court may consider "pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any." *Pyle v. Robertson*, 313 Ark. 692, 695, 858 S.W.2d 662, 663 (1993) (quoting Ark. R. Civ. P. 56(c)). A trial judge may not base his or her decision whether to grant summary judgment on factual allegations made in the briefs. *Id*.

9

It is undisputed that appellant was a creditor of Lois. It is also undisputed that Lois transferred money from the Summit Brokerage bond account to appellee. Further, the circuit court found in its final order that, at the time Lois made the transfer to Ms. Van Divner—which was the same time the transfer was made to appellee—Lois believed or reasonably should have believed that she was incurring debts beyond her ability to pay as they became due. We hold that there are genuine issues of material fact regarding whether Lois received a "reasonably equivalent value" from appellee for the transfer. Because there are no documents or other evidence to review, we cannot determine what other factual issues may arise.

Appellant's complaint also requested the court to impose a constructive trust over the funds held by appellee. The circuit court granted appellee's summary judgment motion, finding that, because there was no fraud or confidential relationship between appellee and appellant, there could be no constructive trust. Again, no evidence has been provided to the court, only allegations. Thus, there are genuine issues of material fact before the circuit court, and summary judgment was inappropriate. Moreover, the doctrine of constructive trust is not as narrow as the circuit court's order suggests. A constructive trust is an implied trust that arises by operation of law when equity demands: "It is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Druyvestein*, 2010 Ark. App. 500, at 7, 375 S.W.3d at 781(holding the doctrine applied in a case of mistake).

Accordingly, we reverse and remand this case for further proceedings.

 

WALMSLEY and HARRISON, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Gean, Gean & Gean*, by: *Roy Gean, III*, for appellee.