WAYMOND M. BROWN, Judge
Appellants Jim A. Carter, Jr., Logging, LLC, and James A. Carter, Jr., appeal the February 17, 2017 order of the Ashley County Circuit Court granting appellee First National Bank of Crossett (FNBC) summary judgment. Appellants maintain that appellee breached the peace when it repossessed equipment from appellants and that the decision of the bankruptcy court was not sufficient to preclude appellants from presenting the issue of damages to a jury. We affirm.[1]
*41 James A. Carter, Jr. (James), formed Jim A. Carter, Jr., Logging LLC (Carter Logging), with James as its sole member. Carter Logging entered into two loan agreements with FNBC on October 22, 2009, and September 21, 2012, respectively. The loans were secured by logging equipment owned by Carter Logging and were personally guaranteed by James. On October 24, 2012, James transferred the assets of Carter Logging, including the equipment used to secure the two loans, to himself. On November 2, 2012, James and his wife, Leigh, filed for relief under Chapter 13 of the United States Bankruptcy Code. That same day, FNBC filed a replevin action against Carter Logging, seeking to repossess the logging equipment. FNBC obtained an order of delivery on November 14, 2012, directing the Sheriff of Ashley County to take possession of the collateral and to immediately deliver it to appellee. The order of delivery was served on Carter Logging on November 16, 2012. After the order of delivery was issued, a motion to stay the order of delivery was filed, and served on FNBC, which included copies of the assignment and notice of the commencement of James's bankruptcy case. A telephone conference was held between appellants' counsel, appellee's counsel, and Judge Don E. Glover concerning the motion to stay. It is alleged that during this conference, the court ordered the collateral to remain in the possession of the sheriff of Ashley County and not be delivered to appellee; however, no order was entered reflecting this.
On November 6, 2012, FNBC repossessed the collateral (a Prentice Log Loader, an Evans trailer, a CIS delimber, a Prentice grappel, a CSI slasher aaw, and a Prentice double V heel) through a repossession service named Advanced Recovery. James subsequently filed a motion for contempt in his bankruptcy case and requested an emergency hearing. A hearing took place on November 29, 2012. The bankruptcy court ordered the equipment returned to James, but specifically reserved ruling on whether the stay violation was willful. During the established time period, a motion for sanctions was filed seeking compensatory and punitive damages for FNBC's willful violation of the automatic stay. A hearing took place on April 16, 2013. At the hearing, appellants sought damages in the amount of $260,000 ($60,000 was for damage to two pieces of equipment, and $200,000 was for lost profits for five months). At the conclusion of the hearing, the court found in pertinent part:
In the testimony today, there is testimony from the debtor that this equipment was leaking hydraulic oil, there's a conflict in the testimony-well, there's testimony that when the equipment, the-what do you call this?-the loader/delimber was delivered back to the debtor. The day the debtor did not bother to go see to it, like I told him to, because he already suggested that there was a problem with the hydraulic oil. So I am going to hold that against the debtor, because I tried to be as careful as I could about that. But the debtor has the burden of proving by a preponderance of the evidence that whatever damage there is to this equipment was done by the bank. And I don't think that the debtor has carried their burden.
Number one, the equipment was already-from the debtor's testimony at the previous hearing, the equipment was already broken to some extent. It's leaking hydraulic oil. I told the debtor to make sure that it was given back to him, so that there would be no problem with running without the proper amount of *42 oil. He didn't do it. The bank's representative said they checked it. So the debtor had the burden of proving that that happened.
The only testimony is he was not there. So he does not have any way to truthfully testify that they didn't check it. I'm inclined to believe they did.
Furthermore, the amount of movement was minimal.
And thirdly, and of great significance is that there's no mechanic to testify, no qualified person, to testify what the bank did has caused any damage to the equipment that did not already exist at the time it was repossessed, or for that matter that there is any serious damage to the equipment. It's the debtor's speculation that it could be damaged, but speculation is not enough to carry the burden of proof.
I have the banker's testimony as to the conversation he had with debtor, where he admitted that this equipment wasn't working properly, that nothing was working properly, except that one piece of property.
I just don't think that it has been proven that what the bank did has caused the debtor's equipment to be useless or worthless. You've changed theories on me in that in your opening statement, your theory was that you wanted the value of the equipment and the cost to repair it, and then it was changed to the money that the debtor could have earned during the period of time.
Either way, it equaled over $200,000.00. I am just not satisfied that you have sustained your burden, number one. Number two, I don't think that whatever damages could have flowed from the bank's actions were the result of a willful violation of the automatic stay, because if the bank had known about the transfer, that it knew that the property could possibly be owned by the debtor individually, that would be one thing. But here they didn't. So that takes the willfulness completely out it.
The only thing they did that was willful was to send that notice, which they probably-most people don't understand that to be a violation of the stay. The continuation of an act against property of the estate is a technical violation. It wasn't a willful violation. The basic predicate there is not there to collect damages or attorney's fees.
The testimony about the 720 Tigercat, the 1997 model, I am just not persuaded that it is worth $25,000.00. It was laid in the weeds for 12 to 18 months. It is 15 or 16 years old. Used equipment in the lumber business is by definition equipment without any equity because the business is so hard on equipment.
There is not sufficient evidence to prove that anything the bank, or the bank's representatives did caused any damage to this equipment. We do not have a mechanic to say that it was pulled while it was in gear, or in some other inappropriate way, that damaged the equipment. No mechanic has testified to what it would cost to repair. There is no way I could affix damages.
The Court's opinion is that on the motions for sanction judgment will be in favor of the bank.
The bankruptcy court entered an order on April 22, 2013, finding that FNBC did not willfully violate the automatic stay and denying James's motion for sanctions. It incorporated by reference its oral findings. This decision was affirmed on appeal.[2]
*43 FNBC filed a new complaint for replevin on July 15, 2013. It included an order entered on June 18, 2013, dismissing James's bankruptcy petition. Appellants filed an objection to order of delivery on July 19, 2013. James filed an answer and counterclaim on July 24, 2013. In the answer, he denied that FNBC was entitled to an order of delivery. In his counterclaim, he sought both compensatory and punitive damages against FNBC for its breach of the peace and for the damages to the equipment. The counterclaim alleged:
6. On Saturday, November 17, 2012, First National Bank of Crossett employed a repossession service, Advanced Recovery located in Pine Bluff, Arkansas, to complete repossession of the equipment listed in their Order of Deliver[y]. Steve Martens, an officer of First National Bank of Crossett, and the employees of the repossession company, went to the defendant's compound located at 2302 Brooks Road, Crossett, Arkansas, 71635, to obtain possession of the Prentice Log Loader, Evans Trailer, the CIS Delimber, the Prentice Grapple, the CSI Slasher Saw and Prentice Double V Heel. This equipment was all located within the compound behind a locked gate. First National Bank of Crossett and its agents proceeded to allow a private citizen whose identity remains unknown, to cut the lock so that the bank officer and the its agents could enter into the defendant's compound and take possession of the collateral described in its Order of Deliver. There was no deputy or any member of the Ashley County Sheriffs Department present when this was done. Someone driving by on the street stopped and offered to cut the lock and was allowed to cut the lock.
7. Steve Martens and other agents of First National Bank of Crossett, proceeded to start the Prentice Loader which meant operation of the hydraulic system and it was loaded and removed from the defendant's compound. All of the equipment was subsequently placed in the repossession lot of First National Bank of Crossett. It was never in the possession of the Ashley County Sheriffs [sic] Department.
8. The Prentice Loader was damaged in the process because it was low on hydraulic fluid. There is now a massive oil leak on the equipment. James A. Carter, Jr., attempted to start the equipment after putting oil in it, it made unusual noises and leaked a substantial amount of oil. The defendant immediately shut the equipment down to avoid further damage.
9. The conduct of First National Bank of Crossett was done without any judicial authority and constituted a breach of the peace pursuant to the Arkansas Uniform Commercial Code. The defendant, James A. Carter, Jr., is entitled to compensatory and punitive damages from First National Bank of Crossett for its breach of the peace.
10. The defendant, James A. Carter, Jr., is entitled to recover compensatory and punitive damages from First National Bank of Crossett for the damage it caused to his compound located at 2302 Brooks Road, Crossett, Arkansas, 71635 and to his equipment.
FNBC filed an answer to the counterclaim on July 30, 2013, denying the material allegations and seeking to have it dismissed. An answer and amended counterclaim was filed on August 2, 2013, changing the address of the compound to 203 Wood Street. FNBC filed an answer to the amended counterclaim on August 5, 2013. The court entered a judgment for replevin and order of delivery on July 25, 2014.
*44 FNBC filed a motion for summary judgment and supporting brief on September 21, 2016. In seeking summary judgment, FNBC stated that the bankruptcy court had already decided the issue regarding the alleged damage to the Prentice loader and that James was barred by res judicata and collateral estoppel from relitigating that issue. FNBC further argued that there was no evidence of breach of the peace because FNBC obtained an Order of Delivery and followed the statutory procedure for replevin of the collateral. James filed a response to FNBC's summary-judgment motion and a countermotion for summary judgment with supporting brief on October 31, 2016. James contended that although the bankruptcy court denied him damages, his appeal was only from that court's denial of his motion for sanctions and that the appellate courts "declined to address the issue of damages raised by the motion for sanctions"; therefore, he never had an opportunity to fully and faithfully litigate the issue. As for damages, he claimed that "the defendant was not notified of the intent to repossess the property on November 17. The Tiger Cat skidder was removed from private property without the presence of the sheriff or permission of the landowner." He also stated that FNBC "entered onto defendant's property without permission and without the presence of the sheriff's office. It was necessary to break a lock and chain to enter into private property. In fact, a private citizen with no authority to act at all apparently did it." FNBC filed a response on November 9, 2016.
A hearing on the competing motions took place on January 20, 2017. At the hearing, FNBC's attorney argued that James had already unsuccessfully argued a right to damages in bankruptcy court concerning the same equipment and, therefore, his counterclaim for damages was barred by res judicata and collateral estoppel. James's attorney argued that there had been no final adjudication on the issue of damages because the appellate courts did not make a finding on the issue. As to breach of the peace, James's attorney argued that FNBC breached the peace because the equipment was kept in FNBC's possession, instead of remaining in the possession of the sheriff, and that there was no law-enforcement officer present when the lock was broken and the equipment was removed. He further argued:
The question in my mind would be: Is the court order itself sufficient to justify the bank entering on the property without the sheriff being present or being involved? I do think it should be a consideration that they disobeyed Judge Glover's order and took the property to the bank's repossession lot.
All of those actions were done with[out] judicial process, without law enforcement. This repossession crew could have gone in and made off with things that did not have anything to do with this case.
....
Mr. Martens acknowledged that the deputy sheriff had left to find the sheriff. The purpose of the deputy sheriff is to ensure the peace.
....
I think we are down to this. They had a court order, and I acknowledge that. But the sheriff was not the one who executed the order. As I said earlier, I think that is the crux of the case. The sheriff did not execute the order of delivery. The bank and the repossession crew did without the sheriff being involved at all.
The deputy sheriff went out to locate the sheriff. As far as the evidence I have, he never returned. The bank and its crew proceeded to take the property. I think *45 it was about one or two o'clock on Saturday afternoon.
The order directs the sheriff to take the property. The sheriff is there to keep the peace and to ensure that they don't trample on other property that they are not suppose[d] to get and take other property and to just protect the debtor.
The bank is actually the one who is going to get it. The sheriff is just to make sure that it's a peaceful transfer.
Judge Glover, on [sic] his particular case, actually ordered the sheriff to retain possession of the property pending further court order.
The order was never written. I submitted a precedent that never got signed. They acknowledge in their Motion for Summary Judgment that that order was made by Judge Glover. I don't think that is an issue.
In my view it would be safe to say that if Judge Glover went ahead and executed the order for it, by them not having it in a place that he states it would, that would be a further breach, but he never signed the order[.]
There was no record of him giving the order. This was a telephone conference hearing, and it was late on a Friday afternoon. I am sure there is no record of it.
The court made an oral ruling, finding that there was no breach of the peace by FNBC because there was a court order (judicial process), and that breach of the peace was not an issue since judicial process had taken place. The court further found that, even if FNBC had broken the lock to get the property, instead of an unnamed person, it would have been allowed to do so because FNBC had an order directing it to take delivery of the property. The court agreed with FNBC that the issue of damages was addressed in bankruptcy court and that claim preclusion applied. However, the court also found that the issue of damages was moot since there was no breach of the peace by FNBC. The court's order granting appellee's motion for summary judgment and dismissing appellants' complaint with prejudice was filed on February 17, 2017. Appellants filed a timely notice of appeal on March 17, 2017. This appeal followed.
A circuit court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law.[3] Once the moving party has established prima facie entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[4] On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material factual question unanswered.[5] This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.[6] Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties.[7] The object of summary-judgment *46 proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied.[8] We will not engage in a sufficiency-of-the-evidence determination.[9]
Appellants argue that the trial court erred by finding that FNBC did not breach the peace, in violation of Arkansas Code Annotated section 4-9-609, which allows a secured party, after default, to take possession of the collateral with judicial process; or without judicial process if it proceeds without breach of the peace.[10] Appellants admit that there was an order for delivery but contend that since delivery was taken at a time when the sheriff was not present, FNBC breached the peace. However, the statute is clear: breach of the peace only becomes an issue if a secured party takes possession of the collateral without judicial process. Here, there is no doubt that FNBC obtained judicial process before repossessing the equipment. Although an unnamed person broke the lock to the property so that FNBC could retrieve the equipment, the court found that FNBC could have broken the lock itself since it had a court order. There was no evidence of a disturbance, as James was not present at the time of the repossession, making the presence of the sheriff unnecessary in this case. Accordingly, we hold that the court correctly granted FNBC summary judgment on this issue.
Next, appellants contend that the court erred by finding that their claim for damages had been resolved by the bankruptcy court. However, the court denied appellants' request for damages on two bases: (1) the issue had been resolved by the bankruptcy court and (2) the request was moot because there was no breach of the peace. Appellants challenge only the first reason for the court's denial of damages. Appellants do not contest that evidence supports the court's finding that the damages issue was moot.[11] Thus, even if appellants' argument had merit, we still would not reverse due to appellants' failure to attack both bases that justified the court's denial of their claim for damages. When two alternative reasons are given for a decision and appellant attacks only one, we must affirm.[12] Even if we were to address the merits of appellants' argument on this issue, appellants have been unable to direct us to a case where damages are appropriate when there is no breach of the peace. Accordingly, we affirm.
Affirmed.
Gruber, C.J., and Harrison, J., agree.

This is the second time this case has been before us. We initially remanded it back to settle the record and ordered rebriefing. Jim A. Carter, Jr., Logging, LLC v. First Nat'l Bank of Crossett , 2018 Ark. App. 107, 2018 WL 736507. Those deficiencies have now been remedied.

Carter v. First Nat'l Bank of Crossett (In re Carter ), 502 B.R. 333 (8th Cir. BAP 2013) ; and Carter v. First Nat'l Bank of Crossett (In re Carter ), 583 Fed.Appx. 560 (8th Cir. 2014).

Mitchell v. Lincoln , 366 Ark. 592, 237 S.W.3d 455 (2006).

New Maumelle Harbor v. Rochelle , 338 Ark. 43, 991 S.W.2d 552 (1999).

Kachigian v. Marion Cty. Abstract Co. , 2011 Ark. App. 704, 2011 WL 5562777.

Druyvestein v. Gean , 2014 Ark. App. 559, 445 S.W.3d 529.

Bingham v. C & L Elec. Coop. , 2015 Ark. App. 237, 459 S.W.3d 831.

Flentje v. First Nat'l Bank of Wynne , 340 Ark. 563, 11 S.W.3d 531 (2000).

See id.

Ark. Code Ann. § 4-9-609 (Repl. 2001).

In fact, during arguments before the court, appellants' counsel stated, "If the court finds there was a breach of the peace, then we get to come back and prove damages." This statement shows that appellants knew that damages were contingent on a finding of breach of the peace.

See Pearrow v. Feagin , 300 Ark. 274, 778 S.W.2d 941 (1989).