Cite as 2023 Ark. App. 432

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-260

TRACEY BURRIS
            APPELLANT/CROSS-APPELLEE

V.

KRISTEN J. SIMMONS AND JAMES M.
SIMMONS

            APPELLEES/CROSS-APPELLANTS

Opinion Delivered October 4, 2023

APPEAL FROM THE FRANKLIN
COUNTY CIRCUIT COURT,
NORTHERN DISTRICT
[NO. 24ODR-19-135]

HONORABLE GORDON W. "MACK"
MCCAIN, JR., JUDGE

AFFIRMED ON DIRECT APPEAL
AND ON CROSS-APPEAL

**ROBERT J. GLADWIN, Judge**

Tracey Burris appeals the Franklin County Circuit Court's October 14, 2021 order

that granted summary judgment to Kristen and James Simmons (collectively, the

"Simmonses") related to her petition for grandparent visitation rights under Ark. Code Ann.

§ 9-13-103 (Repl. 2020). She argues that the circuit court erred as a matter of law in granting

summary judgment on the issues of (1) loss of relationship, and (2) willingness to cooperate.

The Simmonses cross-appeal, requesting that we reverse the January 18, 2022 order for an

extension of time for Burris to file the record on appeal. We affirm both the direct and cross-

appeals.

## I. *Facts and Procedural History*

Burris is the paternal grandmother of the minor children in this case, MC1, born in 2015, and MC2, born in 2019. Burris frequently served as caretaker to MC1 from her birth until October 7, 2019. During that time, MC1 stayed with Burris weekly at her home and in her R.V., which was used by Burris and her daughter-in-law, Kristen, in their jobs as travel nurses. Examples of the care provided to MC1 by Burris included preparing bottles, bathing, meal preparation, changing diapers, and general child care when the Simmonses needed help.

In October 2019, the Simmonses sent a message to Burris alleging that her spouse, Frank, may have been grooming MC1 for molestation and setting forth a list of rules required for her continued contact with the children. The message elicited an emotional reaction from Burris, which is reflected in text messages she sent to James. After receiving Burris's refusal to comply with their requested rules, the Simmonses suspended further contact between Burris and MC1.

On December 26, Burris filed a petition for grandparent visitation rights alleging that she has a significant relationship with MC1; that the relationship would be lost absent a court order; and that a visitation order is in both children's best interest. Burris acknowledged that under Arkansas law, there is a rebuttable presumption that a parent's decision to limit or deny visitation is in the children's best interest. However, she claimed that there are "compelling circumstances" to overcome that presumption—namely, that she loves the children; is physically healthy; and is a nurse, thus a mandatory reporter of abuse

and neglect. Burris did not allege that the children are victims of any abuse or neglect. She filed an amended petition on February 6, 2020.

On May 26, 2021, the Simmonses filed a verified motion for summary judgment in which they attested under oath that there was no existing material issue of fact in this matter. They asserted that Burris could not prove loss of relationship with the children because they had informed her in November 2020–through a letter from their counsel, Sarah E. Capp, to Burris's counsel–that they were not accepting her offer of settlement but that they were agreeable to Burris visiting the children with supervision on set days for the children's birthdays, Halloween, Thanksgiving, and Christmas. They also attested that Burris is not willing to cooperate with them in the event visitation was ordered, noting as proof the emotionally charged text messages sent by Burris to James in November 2019 that he had "lost [his] mind" and her refusal to acknowledge their concerns regarding her husband, Frank Burris. The Simmonses also attached to their verified motion for summary judgment the text messages from November 17, 2019, and the November 2020 letter from Capp to Burris's counsel.

On June 16, Burris filed a response to the motion for summary judgment, accompanied by an affidavit in which she stated she had been a regular caretaker for MC1 "until October 7, 2019." She also stated that "[MC1] was four years old when James [Simmons] stopped letting me see her," and even after she stopped seeing MC1, "the emotional ties that [MC1] and I had were as close as could possibly be." She did not address the text messages in which the Simmonses offered her the opportunity to visit the children

so long as she notified them in advance and agreed not to talk about her husband. Instead, she argued that the text messages and letter attached to the Simmonses' motion for summary judgment were inadmissible because they constituted inadmissible hearsay evidence under Arkansas Rule of Evidence 801 as well as under Arkansas Rule of Evidence 408 as settlement negotiations subsequent to the initiation of the case.

On June 21, the Simmonses filed a reply and attached separate affidavits in which they stated under oath that they had offered Burris supervised visitation via text message and attorney letter, but Burris was "not willing to work with [them] concerning visitation."

On June 23, the motion for summary judgment was heard by the circuit court. At the close of the hearing, the circuit court ruled from the bench that it was "granting the motion for summary judgment" and would be adopting the Simmonses' pleadings and arguments as its findings of fact and conclusions of law. On June 28, the circuit court entered an order awarding summary judgment to the Simmonses and ordered them to submit a request for attorney's fees within thirty days of the entry of the order.

On October 14, the circuit court entered a final order and judgment consistent with that ruling, granting the Simmonses' summary-judgment motion, dismissing Burris's petition with prejudice, and awarding the Simmonses their requested attorney's fees. On October 26, Burris filed a notice of appeal from the October 14 order. At 3:08 p.m. on January 18, 2022, Burris filed in the circuit court a motion for extension of time to file the record prior to the January 24 deadline to lodge the record because the clerk of this court rejected the record due to errors on January 17. Approximately thirty-five minutes later, and

4

without opportunity for the Simmonses to be heard on the motion, the circuit court entered an order granting the extension. The Simmonses filed a notice of appeal from that order on February 17. The two appeals were consolidated pursuant to an order entered in the Simmonses' appeal (from the order extending time to lodge the record). *See Simmons v. Burris*, No. CV-22-280 (Ark. App. May 25, 2022) (order granting appellant's motion to consolidate).

## II. *Standard of Review and Applicable Law*

In the instant case, we use our well-established standard of review:

> Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.

*Barrs v. Todd*, 2023 Ark. App. 206, at 7, 663 S.W.3d 445, 449 (quoting *Jackson v. Sparks Reg'l Med. Ctr.*, 375 Ark. 533, 539, 294 S.W.3d 1, 4–5 (2009)).

The fixing of visitation rights is a matter that ultimately lies within the sound discretion of the circuit court. *Drinkwitz v. Drinkwitz*, 2015 Ark. App. 345, at 6–7, 464 S.W.3d 489, 493. This court reviews visitation cases "de novo on the record," refusing to reverse a finding of fact by a circuit court "unless it is clearly erroneous." *Id.*

5

Arkansas's grandparent-visitation statute includes a rebuttable presumption that a parent's decision to deny or limit grandparent visitation is in the best interest of the child. *Harvill v. Bridges*, 2012 Ark. App. 683, at 3 (citing Ark. Code Ann. § 9-13-103(c) (Supp. 2011)). In order to overcome that presumption, a petitioner must show (among other things) that (1) the petitioner has the capacity to give the children love, affection, and guidance; (2) the loss of the relationship between the petitioner and the children is likely to harm the children;[1] and (3) the petitioner is willing to cooperate with the custodian if visitation with the child is allowed. *Drinkwitz*, 2015 Ark. App. 345, at 7–8, 464 S.W.3d at 493 (citing Ark. Code Ann. § 9-13-103(e)); *see also Harvill*, 2012 Ark. App. 683, at 3.

"[I]f there is a relationship in existence that, while limited, has not been lost, and if there is no evidence that the relationship would be lost were grandparent visitation not established by the court, a grandparent's petition for visitation is premature." *Harvill*, 2012 Ark. App. 683, at 3. Likewise, if the evidence shows that the grandparents would not cooperate with the parents, then court-ordered visitation is not warranted. *Id.*; s*ee also Oldham v. Morgan*, 372 Ark. 159, 165, 271 S.W.3d 507, 511 (2008).

A motion for summary judgment may be supported only by pleadings, depositions, answers to interrogatories and admissions on file, and affidavits. *See Druyvestein v. Gean*, 2014 Ark. App. 559, 445 S.W.3d 529; Ark. R. Civ. P. 56(c). When a circuit court goes beyond the

---

[1]Arkansas Code Annotated section 9-13-103(e) has since been amended to include circumstances in which the loss of relationship is likely to cause emotional distress to the children or result in the emotional abuse or neglect of the children.

pleadings, discovery, and affidavits, it errs for purposes of summary judgment, and its procedure falls outside the scope of Rule 56. *Godwin v. Churchman*, 305 Ark. 520, 524, 810 S.W.2d 34, 36 (1991).

III. *Discussion*

A. Direct Appeal

Arkansas Code Annotated section 9-13-103 governs visitation rights of grandparents when the child involved is in the custody of a parent; specifically, section 9-13-103(b)(5)(A) provides that a circuit court may order grandparent visitation only after finding that there is clear and convincing evidence to overcome the presumption that the parental decision is in the child's best interest. The burden is on a grandparent-visitation petitioner to rebut that presumption. Ark. Code Ann. § 9-13-103(c)(1). To accomplish this, the petitioner must prove by a preponderance of the evidence that she has established a significant and viable relationship with the child and that visitation is in the best interest of the child. Ark. Code Ann. § 9-13-103(c)(2)(A)–(B).

The Arkansas Supreme Court has held that in order to show a loss of relationship, a petitioner must demonstrate that the relationship "had been lost or would be lost." *Harvill*, 2012 Ark. App. 683, at 3. In their motion for summary judgment, the Simmonses argued that Burris could not show a loss of relationship—based on Capp's letter, dated November 2, 2020, in which they rejected Burris's offer of settlement and made a counteroffer of specified, supervised visitation. This argument was adopted by the circuit court in its final order and judgment.

Burris attempts to distinguish *Harvill* because the grandparents in that case were receiving visitation with the children up to the time of the filing of their petition for visitation. 2012 Ark. App. 683, at 2. This court held that because visitation was never stopped, the petition was for an increase in visitation that was already being enjoyed. *Id.* at 4. Burris notes that her visitation was stopped in October, and the petition was filed in late December because it had not resumed.

We disagree and hold that the circuit court did not err in finding that Burris failed to meet proof with proof on the issue of her loss of relationship with the children. The uncontroverted evidence establishes that Burris regularly took care of MC1 until October 7, 2019. Just over a month later, on November 17, James advised her via text that he and Kristen "ha[d] made the difficult decision to disallow contact" between Frank Burris and MC1 because they believed that "Frank has been grooming [MC1] for molestation." James expressed concern that Burris failed "to see and/or acknowledge" certain "red flags," and, consequently, he imposed certain "rules" for visits going forward—that Burris schedule her visits with the children so that one or both parents could be present and that Burris avoid any mention of Frank in front of MC1. James then wrote, "We know how much she cares for you, which is why these rules are being put in place to allow you to still be able to see them, but if those rules aren't adhered to, we will not be able to allow continued contact."

Burris indicated that she was not receptive to the rules that James requested, responding, "Son, you have lost your mind[,] and you need a psychological evaluation!!" James countered, "[I]t is not I who have lost my mind[,] it is you who have lost your

8

privileges[;] goodbye." Burris sent a series of texts in which she asked, "Where is your respect for your mother???!!!" and, "If you think you are going to keep me away from [MC1] you have lost your mind!!!!" She added, "Further more [sic] you don't control your mom!!!"

Six weeks later, Burris filed her petition for visitation alleging that she had lost, or would necessarily lose, her relationship with MC1 and MC2[2] if the circuit court did not intervene. Burris specifically acknowledges in her affidavit that, even after she stopped visiting MC1 in October 2019, "the emotional ties that she and I had were as close as could possibly be," and MC1 "loved me as much as a five-year-old could possibly love a grandmother." Further, the Simmonses' affidavits and verified motion for summary judgment demonstrate that they were agreeable to Burris having supervised visits with the children both before and after she filed her petition with the circuit court.

This evidence supports the circuit court's finding that Burris did not lose her relationship with MC1 prior to filing her petition—nor was she likely to lose her relationship with MC1—as long as she adhered to the Simmonses' guidelines to protect MC1. *See Oldham*, 372 Ark. at 166, 271 S.W.3d at 511 (indicating the time of filing the petition is the relevant time for determining whether the relationship has been or would likely be lost). The Simmonses' correspondence clearly states that they understood and appreciated the nature of Burris's relationship with MC1 and were interested in maintaining that relationship as

---

[2]Burris's petition does not allege, nor does the evidence indicate, that she had a close relationship with MC2, who was an infant at the time the petition was filed.

long as Burris took their safety concerns seriously and respected their decision to cut off contact with Frank.

In *Hollingsworth v. Hollingsworth*, 2010 Ark. App. 101, at 3, 377 S.W.3d 313, 315, the circuit court considered whether a relationship between a grandfather and his grandson had been lost when "the extensive visitation that had been previously permitted . . . had been curbed" and determined it had not. In *Hollingsworth*, the child's guardian "initially stopped, and then sharply restricted, [the petitioner's] visitation" by no longer allowing overnight visits and allowing visitation for only a few hours at a time. *Id.* This court affirmed the circuit court's finding that the relationship had not been lost, even though the restrictions greatly limited contact between the petitioner and his grandson.

Similarly, in *In re Adoption of J.P.*, 2011 Ark. 535, at 17, 385 S.W.3d 266, 277, the child's guardian "was allowing [the petitioners] to visit [their grandchild] before the filing of their petition for . . . visitation." However, the guardian had limited that visitation to one supervised hour each week. *Id.* The circuit court held these limitations were "unreasonable." *Id.* On appeal, the Arkansas Supreme Court reversed, finding that "there was indeed a relationship in existence that, while limited, had not been lost; nor was any evidence presented that the relationship would be lost." *Id.*

The evidence establishes that Burris had a strong relationship with MC1 up until the time that she filed her petition for visitation, and it also shows that the relationship would continue if Burris would simply cooperate with the Simmonses. Burris failed to present evidence to show that visitation was "altogether denied." *See Morris v. Dickerson*, 2012 Ark.

App. 129, at 1–2, 388 S.W.3d 910, 910–11. Accordingly, we hold that the circuit court properly awarded summary judgment to the Simmonses. *See also Drinkwitz*, 2015 Ark. App. 345, at 8–9, 464 S.W.3d at 494 (finding an abuse of discretion by the circuit court in awarding visitation because evidence that the guardian was "starting to keep" the children away from petitioners was "some acknowledgement that the relationship was not lost," and the petitioners' fear that they would not see the children again without a visitation order was "unfounded" considering the guardian had in the past demonstrated willingness to facilitate a relationship between them).

Section 9-13-103(e) requires that the petitioner prove by a preponderance of the evidence both the loss of relationship and willingness to cooperate. Because Burris failed to meet proof with proof regarding the loss-of-relationship element, we need not address her argument regarding the willingness-to-cooperate element.

### B. Cross-Appeal

On cross-appeal, the Simmonses submit that there is a procedural problem that is fatal to this appeal. In cases involving extensions of time to lodge the record, the Arkansas Supreme Court has "made it exceedingly clear to the bench and bar that we expect strict compliance with the requirements of Rule 5(b), and that we do not view the granting of extensions as mere formality." *Rose Care, Inc. v. Jones*, 355 Ark. 682, 687, 144 S.W.3d 738, 740–41 (2004). The Simmonses contend that Burris did not strictly comply with the requirements of Rule 5(b) and that they did not have "the opportunity to be heard" on her

motion because the circuit court entered the order granting the extension only thirty-five minutes after the motion had been filed.

This court has addressed the issue of how long was long enough to give an appellee an adequate "opportunity to be heard." In *Kinder v. Kinder*, 2021 Ark. App. 40, 617 S.W.3d 307 (*Kinder I*), we remanded for the circuit court to determine whether it had complied with Ark. R. App. P.–Civ. 5(b)(1) when it granted appellant David Kinder an extended time to file the record. *Kinder I* noted that the circuit court's order did not comply with Rule 5 because it did not include the mandatory findings required by the rule. After this court's remand in *Kinder I*, the circuit court held a hearing and issued an order on remand making findings under Rule 5. Then in *Kinder v. Kinder*, 2022 Ark. App. 39, 639 S.W.3d 882 ("*Kinder II*"), after remand, this court dismissed the appeal with prejudice for failure to comply with Rule 5. The Arkansas Supreme Court accepted *Kinder II* on review, and it vacated that opinion and remanded to this court for a decision on the merits.

In *Kinder II*, twenty-eight hours passed between when the motion to extend was filed and when the order was entered. *Id.* We held that this amount of time did not give the responding party sufficient opportunity to be heard on a Rule 5(b)(1) motion. *Id.* We further held that even though counsel for the appellee had stated that the appellee would not have objected to the motion if she had had the opportunity to be heard, "it does not matter that [the appellee] would not have objected to the extension if she had the opportunity to respond." *Id.* at 3, 7, 639 S.W.3d at 884, 886.

The Arkansas Supreme Court, in vacating this court's opinion in *Kinder II*, cited only one case—*Holloway v. Arkansas State Board of Architects*, 348 Ark. 99, 71 S.W.3d 563 (2002). *See Kinder v. Kinder*, No. CV-19-858 (Ark. April 21, 2022) (order granting appellant's petition for review; vacating court of appeals opinion; and remanding to court of appeals). *Holloway* held that the appellee must object to the entry of the extension order prior to the filing of the record. 348 Ark. at 104, 71 S.W.3d at 566.

The Simmonses claim they did object to the entry of the extension order; specifically, they filed a notice of appeal from the order granting the extension before the record was filed. The Simmonses subsequently filed the record and requested that this court consolidate the two related appeals, and that request was granted. This is the same procedure that was followed in *Ashley v. Ashley*, 2016 Ark. 161, at 6, 489 S.W.3d 660, 664, and in that case, the Arkansas Supreme Court addressed the merits of the argument that the circuit court had improperly extended the time to lodge the record. Therefore, the Simmonses maintain the procedural issue in *Holloway* does not apply in this case.

The Simmonses also acknowledge that they suffered no prejudice from the granting of the extension without an opportunity to be heard. But as noted previously in *Kinder II*, "[u]nder a strict-compliance standard, it does not matter that [the appellee] would not have objected to the extension if she had the opportunity to respond." 2022 Ark. App. 39, at 7, 639 S.W.3d at 886. Even though the Arkansas Supreme Court vacated the decision in *Kinder II*, the Simmonses maintain it likely was because of a procedural issue rather than relating to prejudice.

13

The Simmonses claim that the "timing of the filings" makes clear there was not an opportunity for them to be heard, and there is neither evidence of any waiver by their counsel regarding the right to an opportunity to be heard nor a signature on the extension order by their counsel indicating any agreement with respect to the opportunity to be heard.

The Simmonses urge that the procedure they followed is the same as was employed in *Ashley, supra*. In *Ashley*, the appellant obtained an extension, and the appellees filed a notice of appeal from a nunc pro tunc order granting the extension (where the original order did not meet the requirements of Rule 5). *Id.* They acknowledge it is true that the appellees in *Ashley* objected to the entry of the nunc pro tunc order, but that is because they had time to do so (i.e., an "opportunity to be heard"). *Id.* Once the nunc pro tunc order was entered, they filed a notice of appeal and pursued their appeal as part of a consolidated appeal, just as the Simmonses are attempting to do. *Id.*

Here, the Simmonses had a mere thirty-five minutes to file a response to the extension motion. Their notice of appeal made the basis of their objection clear, and they specifically cited *Kinder II*, which had been decided after the extension order was entered but before the Simmonses had filed their notice of appeal.

The Simmonses argue that their lack of "opportunity to be heard" on the motion to extend the time to lodge the record is a jurisdictional problem that is not curable. *See, e.g., Lancaster v. Carter*, 372 Ark. 181, 182, 271 S.W.3d 522, 523 (2008) (holding that on remand for determination of compliance with Rule 5, the circuit court must "determine whether the rule was complied with *at the time the original motion for extension of time was filed and granted*")

14

(emphasis in original). They ask that we reverse the order extending time to lodge the record, which then means that the record was filed late, and the appeal should be dismissed.

We disagree. Ark. R. App. P.–Civ. 5(b) requires that an order to extend the time to lodge the record on appeal must include findings that

> (A) The appellant has filed a motion explaining the reasons for the requested extension and served the motion on all counsel of record;

> (B) The time to file the record on appeal has not yet expired;

> (C) All parties have had the opportunity to be heard on the motion, either at a hearing or by responding in writing;

> (D) The appellant, in compliance with Rule 6(b), has timely ordered the stenographically reported material from the court reporter and made any financial arrangements required for its preparation; and

> (E) An extension of time is necessary for the court reporter to include the stenographically reported material in the record on appeal or for the circuit clerk to compile the record.

The order for extension of time to file the record in this case contains the requisite findings and, unlike the order in *Kinder II*, is valid on its face. *Kinder II* is distinguishable in that when the case first came up for appeal in *Kinder I*, the order extending time to file the record was facially invalid because it did not contain the requisite findings. *Kinder I*, 2021 Ark. App. 40, at 2, 617 S.W.3d at 308. This court remanded *Kinder I* for the circuit court to make the requisite findings of fact, and on remand, the circuit court entered an order finding that all parties did not have the opportunity to be heard on the motion for extension. *Kinder II*, 2022 Ark. App. 39, at 3, 639 S.W.3d at 884. This court went on to hold that twenty-eight

15

hours is not enough time to afford such an opportunity, but the Arkansas Supreme Court determined otherwise. *Id.*

In this case, the order for extension of time to file record contains a finding that all parties were afforded an opportunity to be heard on the motion for extension of time to file record. There is nothing in the record to show that this finding is clearly erroneous. Further, "a circuit court is not required to hold a hearing before entering an extension order if there is an opportunity to respond in writing." *Ashley*, 2016 Ark. 161, at 4, 489 S.W.3d at 663.

There were one hundred days between the filing of the order for extension of time to file record and the lodging of the record in this case during which the Simmonses had the opportunity to file a motion with the circuit court to raise whatever objection they might have had to the circuit court's findings. They failed to raise any objection to the findings in the order for extension of time to file record, and moreover, the Simmonses had the opportunity to file a motion to dismiss this appeal before the record was lodged with this court but failed to do so.

Only on appeal did they contest those findings without any facts in the record to support their argument. There is nothing in the record regarding the "opportunity to be heard" finding, other than the order at issue and the timing of the filings. The timing of the filings alone does not clearly show that the facts in the resulting order are erroneous, and there are simply not facts in the record provided by the Simmonses to show error.

The Simmonses had the duty to show both error and to provide a sufficient record to demonstrate that error. *Clowney v. Gill*, 326 Ark. 253, 255, 929 S.W.2d 720, 721 (1996).

It is assumed on appeal that the circuit court correctly applied the law when there is no evidence to the contrary. *Davis v. Office of Child Support Enf't*, 68 Ark. App. 88, 5 S.W.3d 58 (1999). Without more, we are unable to hold that the circuit court erred in granting Burris's motion. Accordingly, we affirm.

Affirmed on direct appeal and on cross-appeal.

GRUBER and MURPHY, JJ., agree.

*Tripcony May*, by: *James L. Tripcony*, for appellant/cross-appellee.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellees/cross-appellants.